James P. O'CONNELL, et al., Plaintiffs,

v.

Andrew C. HOVE, Jr., in his capacity as Acting Chairman, Federal Deposit Insurance Corporation and Federal Deposit Insurance Corporation, Defendants.

No. CV–92–5379.

United States District Court, E.D. New York.

May 17, 1993.

Elaine Kaplan, Gregory O'Duden, National Treasury Employees Union, Washington, DC, for plaintiffs.

Gregory Francis Taylor, F.D.I.C., Washington, DC, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiffs [1]—employees of the Federal Deposit Insurance Corporation ("FDIC")—bring this action for overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), and the Federal Employees Pay Act ("FEPA"), 5 U.S.C. § 5542. They ground jurisdiction on 28 U.S.C. § 1331, federal question jurisdiction; 29 U.S.C. § 216(b), the jurisdictional grant of the FLSA; and 12 U.S.C. § 1819 (Fourth), the FDIC "sue and be sued" clause.

---

1. All references to "Plaintiffs" include the four named plaintiffs appearing on the amended complaint, as well as the 137 employees seeking to opt into this action under 29 U.S.C. § 216(b).

The FDIC does not concede, and this court does not address, whether the "opt-in" plaintiffs are proper parties to this litigation.

Plaintiffs are covered by a Collective Bargaining Agreement ("CBA") negotiated between the National Treasury Employees Union ("NTEU") and the FDIC which includes a negotiated grievance procedure and does not specifically exclude grievances concerning the FDIC's application of the FLSA or FEPA. Defendants bring this motion to dismiss for lack of subject matter jurisdiction, arguing that unless a collective bargaining agreement expressly removes a specific grievance from coverage, federal employees must avail themselves of negotiated grievance procedures when a dispute arises regarding an agency's application of the FLSA. Plaintiffs respond by asserting that the FLSA grants federal employees a non-waivable right to enforce their overtime claims in a judicial forum and that the governing Federal Circuit case law to the contrary—specifically *Carter v. Gibbs* and its progeny—is both incorrectly decided and not binding authority on this court. For the following reasons, defendants' motion is granted and this action is dismissed in its entirety.

## FACTS

Plaintiffs are employees of the FDIC who have worked a significant number of overtime hours over the past three years or who anticipate working overtime if this action is resolved in their favor. (Complaint ¶ 11)[2] Section 7(a)(1) of the FLSA provides that employees covered by the terms of the statute must be paid one and one-half times their regular hourly rate of pay if they work more than forty hours during a workweek. 29 U.S.C. § 207(a)(1). Employees may be exempted from the overtime provisions of the FLSA if their work performed meets certain statutory criteria. *See* 29 U.S.C. § 213.

When "exempt" federal employees work overtime, they are compensated at a rate established by the FEPA. 5 U.S.C. § 5542(a). For an exempt employee whose basic pay is at a rate which does not exceed the minimum basic pay for a GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly

rate of basic pay. 5 U.S.C. § 5542(a)(1). Where an exempt employee's basic rate of pay exceeds the minimum basic pay for a GS–10, the rate of overtime pay is capped at a rate one and one-half times the hourly rate of the minimum basic pay for a GS–10. 5 U.S.C. § 5542(a)(2). Plaintiffs in this action are employees compensated at a rate that exceeds the level of pay for a GS–10. (Complaint ¶ 11)

The essence of plaintiffs' complaint is that the FDIC has improperly classified their positions as "exempt" for purposes of the FLSA, subjecting plaintiffs to the overtime cap set by the FEPA and thereby "illegally fail[ing] to pay [them] overtime pay at the rate required by the FLSA." (Complaint ¶ 15) Plaintiffs also allege that the FDIC has permitted "certain of the plaintiffs to work overtime hours without compensation." (Complaint ¶ 11) For the purposes of this motion, the parties have entered into a stipulation concerning the following three points. First, as mentioned above, they agree that all plaintiffs are covered by the terms of a collective bargaining agreement between the NTEU and the FDIC that includes a negotiated grievance procedure. (Stipulation ¶ 1) Second, the CBA at issue does not preclude or exclude from review employee grievances arising under the FDIC's application of the FLSA or FEPA. (Stipulation ¶ 2) Third, no plaintiff has yet grieved any dispute regarding the FDIC's application of the FLSA or the FEPA under the negotiated grievance procedure. (Stipulation ¶ 3)

## DISCUSSION

This case involves the interplay between two statutory schemes: the FLSA, which affords employees a right to invoke the judiciary to enforce various minimum wage and overtime provisions; and the Federal Service Labor Management Relations Statute, which is Chapter 71 of the Civil Service Reform Act of 1978 ("CSRA"), which requires that collective bargaining agreements for federal employees include dispute resolution procedures that govern *all* grievances not explicitly ex-

---

**2.** All cites to the complaint refer to plaintiffs' First Amended Complaint filed on February 10, 1993.

cluded. The Court of Appeals for the Federal Circuit, sitting *en banc*, has decided that Section 7121(a) of the CSRA deprives a district court of subject matter jurisdiction over FLSA disputes brought by unionized federal employees. *Carter v. Gibbs*, 909 F.2d 1452, 1458 (Fed.Cir.) (en banc), *cert. denied sub nom.*, *Carter v. Goldberg*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). Plaintiffs nevertheless ask this court to allow them to pursue this FLSA action. In considering the issue now presented, this court first examines the two statutes in question, then discusses the *Carter* opinion's holding and rationale, and finally evaluates plaintiffs' arguments as to why *Carter* was wrongly decided.

## I. *The Statutory Scheme*

■ Congress enacted the FLSA in 1938 in order "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well being of workers.'" *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981) (*quoting* 29 U.S.C. § 202(a)). Section 16(b) of the FLSA affords employees the right to enforce the Act's minimum wage and overtime provisions "in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b).[3] In 1974, Congress amended the FLSA to extend coverage, including the right to judicial enforcement, to federal employees. Pub.L. No. 93–259, 88 Stat. 55 (codified at 29 U.S.C. 203(e)). The legislative history of the 1974 amendments indicates that Congress expected the FLSA to be administered in the federal sector in a manner consistent with the Act's administration in the private sector. *See American Federation of Government Employees v. Office of Personnel Management*, 821 F.2d 761, 769 (D.C.Cir.1987) ("The House Report indicates ... that in resolving any conflicts between [the civil service system and the FLSA, the Office of Personnel Management] 'will administer the provisions of the [FLSA] in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy.'") (*quoting* Fair Labor Standards Amendments of 1974, H.R.Rep. 913, 93d Cong., 2d Sess. 28, 28 (1974), U.S.Code Cong. & Admin.News 1974, p. 2811).

Four years after extending the FLSA to federal employees, Congress enacted the Civil Service Reform Act. The CSRA "comprehensively overhauled the civil service system," *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985), by establishing an "elaborate remedial system ... constructed step by step, with careful attention to conflicting policy considerations." *Bush v. Lucas*, 462 U.S. 367, 388, 103 S.Ct. 2404, 2417, 76 L.Ed.2d 648 (1983). This scheme was intended to replace the "outdated patchwork of statutes and rules built up over almost a century." S.Rep. No. 969, 95th Cong., 2d Sess. 1, 3 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2725. The CSRA "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443, 108 S.Ct. 668, 671, 98 L.Ed.2d 830 (1988).

Section 7121(a) of the CSRA provides as follows:

(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d) and (e) of this section, *the procedures shall be the exclusive proce-*

---

**3.** The section provides in pertinent part as follows:

Any employer who violates the provisions of ... section 207 of this title shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages.... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated....

*dures for resolving grievances which fall within its coverage.*

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

5 U.S.C. § 7121(a) (1988) (emphasis added).[4] Subsections 7121(d) and (e), specifically excepted from the above exclusivity provision, give employees the right to resolve certain types of disputes through the negotiated grievance procedures or through some alternative channel:

(d) An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title [discrimination] which also falls under the coverage of the negotiated grievance procedure may raise the matter *under a statutory procedure or the negotiated procedure, but not both....*

(e)(1) Matters covered under sections 4303 [unacceptable performance] and 7512 [disciplinary actions] of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised *either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both.* Similar matters which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised *either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure but not both....*

5 U.S.C. § 7121(d) & (e) (emphasis added). Subsection 7121(c) excludes from the griev-

ance process altogether disputes falling into one of five specific categories.[5]

The parties agree that none of the exceptions to 7121(a)'s exclusivity provision apply to plaintiffs. Further, as mentioned above, the parties also agree that the CBA governing the relationship between the NTEU and the FDIC did not specifically exclude FLSA claims from the grievance procedure. Accordingly, plaintiffs clearly have the right to invoke the grievance procedure to pursue their FLSA claims. The question is whether, given the clear language of the CSRA, plaintiffs also have the right to seek to enforce the FLSA in this court.

## II. *Carter v. Gibbs*

In *Carter v. Gibbs,* the Court of Appeals for the Federal Circuit, facing the precise question now presented, held that federal courts lack jurisdiction over an FLSA pay dispute not explicitly excluded from grievance and arbitration pursuant to section 7121(a)(2). *Carter,* 909 F.2d at 1455. The *Carter* court examined the explicit text of Section 7121 of the CSRA and section 16(b) of the FLSA and concluded as follows:

Th[e] absence of an express provision for overtime claims is not the product of congressional inattention to the FLSA. To the contrary, the original Senate version of section 7121(c) expressly included FLSA claims among those matters that could not be grieved.... But that proviso was removed in conference, and Congress excepted from section 7121(a)(1)'s exclusivity rule only one aspect of the FLSA: The Equal Pay Act, 29 U.S.C. § 206(d), which is not under section 7121(d). Therefore, appellants premise their argument not on the CSRA or its history but on the principle of

---

**4.** A grievance is defined in 5 U.S.C. § 7103(a)(9) as any complaint:

(A) by any employee concerning any matter relating to the employment of the employee; (B) by any labor organization concerning any matter relating to the employment of any employee; or (C) by any employee, labor organization, or agency concerning—(i) the effect or interpretation, or a claim of breach, of a collective bargaining agreement; or (ii) any claimed violation, misinterpretation, or misapplication of an law, rule, or regulation affecting conditions of employment....

**5.** That subsection provides:

(c) The preceding subsections of this section shall not apply with respect to any grievance concerning—(1) any claimed violation of subchapter III of chapter 73 of this title (relating to prohibited political activities); (2) retirement, life insurance, or health insurance; (3) a suspension or removal under section 7532 of this title [one in the interests of national security]; (4) any examination, certification or appointment; or (5) the classification of any position which does not result in the reduction in grade or pay of an employee.

statutory construction that "silent repeals of express statutory text are strongly disfavored." ... But adherence to this principle does not advance their cause. Now, as before the CSRA, federal employees are entitled to recover overtime compensation from the government "in any Federal or State court of competent jurisdiction." ... The effect of Congress' decision to retain the FLSA overtime claims of unionized employees within the ambit of grievable matters, however, is to put them in the administrative rather than the judicial arena unless the parties otherwise agree.... Properly put, the question here is not whether the CSRA implicitly repealed section 16 of the FLSA; it is whether an additional exception to CSRA section 7121(a)(1)'s exclusivity provision should be implied, an exception allowing review of overtime claims both in the courts and through the negotiated procedures. The answer is no.

*Carter,* 909 F.2d at 1455.

Examining statutory text, legislative history, and Supreme Court precedent, the *Carter* court then went on to discuss and reject three arguments put forth by plaintiffs here: first, that the overall integrated scheme of the CSRA did not repeal existing rights under the FLSA, *id.* at 1455–56; second, that the learning of cases dealing with private sector labor disputes—specifically *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *Barrentine,* 450 U.S. at 728, 101 S.Ct. at 1438, and *Atchison, T. & S.F.R. Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987)—applies similarly to federal sector disputes, *Carter,* 909 F.2d at 1456–57; and third, that the CBA negotiated grievance process is inferior to a judicial alternative and therefore undermines federal sector enforcement of the FLSA, *id.* at 1457–58. The *Carter* court concluded with the following observation:

By accepting a position covered by the collective bargaining agreement, [plaintiffs] effectively chose the procedures negotiated by the union. They cannot now assail the sufficiency of those procedures, and we decline their invitation to meddle with the civil service system.

*Carter,* 909 F.2d at 1457. This position has been reaffirmed by the Federal Circuit in several recent cases. *See Adams v. United States,* 979 F.2d 840, 842–43 (Fed.Cir.1992), *petition for cert. filed* (1993); *Aamodt v. United States,* 976 F.2d 691, 692 (Fed.Cir. 1992); *Muniz v. United States,* 972 F.2d 1304, 1309 (Fed.Cir.1992). The opinion also has been cited with approval by other circuits. *See Parker v. King,* 935 F.2d 1174, 1178 (11th Cir.1991) (transferring jurisdiction to Federal Circuit to review employees' FLSA claim against Social Security Administration but recognizing that *Carter* may already have decided the question); *Saul v. United States,* 928 F.2d 829, 842 & n. 23 (9th Cir.1991) (citing *Carter* for proposition that "Federal courts have used the [CSRA's] comprehensive and exclusive nature as a reason for holding that it precludes suit under a variety of other federal statutes."); *cf. Morales v. Dep't of Army,* 947 F.2d 766, 769 (5th Cir.1991) (dismissing action brought under federal torts claims act by unionized federal employee because CSRA establishes "exclusive procedures" for resolving grievances).

### III. *Carter's Applicability*

As an initial matter, there is no dispute that decisions from the Court of Appeals for the Federal Circuit are not binding authority on this court. The appeals in *Carter* and its progeny arrived at the Federal Circuit from various district courts (in addition to the Court of Claims) because jurisdiction in those actions initially rested on the Tucker Act. *See* 28 U.S.C. §§ 1295(a)(2) & 1346(a)(2).[6] However, the Tucker Act does

---

6. Section 1295(a)(2) of Title 28 of the United States Code confers exclusive jurisdiction in the Federal Circuit Court of Appeals over

an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based in whole or in part on section 1346 of this title....

Section 1346(a)(2) provides concurrent jurisdiction in the district courts and the Court of Claims over civil actions or claims against the United States

not exceeding $10,000 in amount, founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract

not displace an otherwise valid exercise of federal question jurisdiction. *C.H. Sanders Co. v. BHAP Housing Development Fund Co.*, 903 F.2d 114, 119 (2d Cir.1990). In this case, plaintiffs ground jurisdiction upon the FDIC's waiver of sovereign immunity clause. *See* 12 U.S.C. § 1819 ("The Federal Deposit Insurance Corporation shall have power— **Fourth.** To sue and be sued, and complain and defend, in any court of law or equity, State or Federal.").[7] Thus, it appears that an appeal of this decision would go to the Second and not to the Federal Circuit.

■ Nevertheless, while this court technically is not bound by *Carter,* the fact that a federal appellate court sitting en banc addressed the identical facts and arguments to those presented here is certainly persuasive. More importantly, this court finds the rationale put forth by the *Carter* court taken in conjunction with the clear language of Section 7121(a)—"the procedures shall be the *exclusive procedures* for resolving grievances which fall within its coverage"—compelling support for defendants' motion. Plaintiffs attempt to convince this court to reject *Carter* based on several arguments, all but one of which were explicitly considered by the Federal Circuit, as mentioned above; since this court finds *Carter*'s rationale persuasive, it discusses below only plaintiffs' argument not explicitly addressed in that opinion.

Plaintiffs contend that Congress enacted Section 7121(a) to make the negotiated grievance procedure exclusive only as to *administrative* remedies and not to extinguish existing judicial causes of action. They point to several sources for support. First, they argue that subsections (d) and (e), provisions upon which the *Carter* court relied, allow employees to choose between arbitration and agency—as opposed to judicial—review. Second, plaintiffs look to the statute's language ("procedures" rather than "remedies"), overall history (the complicated schemes that the CSRA sought to streamline were primarily administrative), and specific history (the "exclusive procedures" language derived from an executive order that clearly referred to administrative procedures). Third, plaintiffs argue that the following sentence from the CSRA's legislative history—specifically a committee report—confirms their interpretation of "exclusive procedures":

> Senate section 7221(a)(1) [final version 7121(a)(1) ] provides that, except for certain specified exceptions, an employee covered by a collective bargaining agreement must follow the negotiated procedures rather than the *agency* procedures available to other employees not covered by an agreement.

H.R.Rep. No. 1717, 95th Cong.2d Sess. 157 (1978) (emphasis added), reprinted in *Legislative History of the Federal Service Labor Management Relations Statute, Title VII of the Civil Service Reform Act of 1978,* 96th Cong., 1st Sess. (Comm.Print 1979) at 825.

Although clever and eloquently set forth at oral argument, plaintiffs' argument ultimately fails to persuade this court both for the reasons that follow and for those articulated in and underlying the *Carter* opinion. First, the "exclusive procedures" language of the statute is clear and unambiguous. It is an elementary rule of statutory construction that a court must begin with the language of

with the United States, or for liquidated or unliquidated damages in cases not sounding in tort ...

7. They also ground jurisdiction on Section 16 of the FLSA, 29 U.S.C. § 216(b) (1982). However, the relevance of so doing is unclear in light of other FLSA cases that also grounded jurisdiction on this provision but nevertheless were deemed Tucker Act cases. *See, e.g., Parker,* 935 F.2d at 1177–78 (holding that Tucker Act is exclusive jurisdictional basis for FLSA claims against the government brought under § 16(b)). Plaintiffs in this action note that they could not rely upon the Tucker Act even if they were so inclined since the FDIC is a government corporation that does not

use appropriated funds for its operating expenses and the Tucker Act does not supply jurisdiction for claims against "non-appropriated fund instrumentalities." *See United States v. Hopkins,* 427 U.S. 123, 125–26, 96 S.Ct. 2508, 2510, 49 L.Ed.2d 361 (1976) (*per curiam* ). Plaintiffs represent—and defendants do not contest—that the United States would not be the source for the FDIC's liability in this case. When "the United States is not the immediate source of funds from which an agency pays out a money judgment, a suit against the [FDIC] will not be considered to be a suit against the United States." *Ensign Financial Corp. v. Federal Deposit Ins. Corp.,* 785 F.Supp. 391, 401 (S.D.N.Y.1992).

the statute. *See* Hon. Felix Frankfurter, *Some Reflections on the Reading of Statutes,* Sixth Annual Benjamin N. Cardozo Lecture delivered before the Association of the Bar of the City of New York, March 18, 1947 (*reprinted in* 47 Colum.L.Rev. 527, 529 (1947)). As Justice Frankfurter explained:

> Though we may not end with the words in construing a disputed statute, one certainly begins there. You have a right to think that a hoary platitude, but it is a platitude not acted upon in many arguments.... We must, no doubt, accord the words the sense in which Congress meant them.... And so we assume that Congress uses common words in their popular meaning, as used in the common speech of men.

*Id.* at 535–36.

Second and related, the structure of Section 7121 supports a broad reading of "exclusive procedures" in that it contains exceptions to its coverage and a specific means of excluding FLSA claims: if a union feels that its members should be allowed to pursue these grievances in court, the CBA may so provide.[8] Third, plaintiffs' argument does not address satisfactorily the existence and implications of 7121(c). The five exclusions listed therein, which include Equal Pay Act claims, are not subject to negotiated procedures but may be pursued through other (including judicial) channels; Congress initially included FLSA claims in that subsection but then omitted those claims without any explanation.

Finally, plaintiffs' argument fails to acknowledge the overall and systemic revision effected through the CSRA. *Cf. United States v. Fausto,* 484 U.S. 439, 453, 108 S.Ct. 668, 676, 98 L.Ed.2d 830 (1988) (discussing broad scope of CSRA and holding that exclusive grievance procedures under section 7121(a) preempt non-preference federal employee's direct right of action under Back Pay Act which was available through judicial gloss pre-CSRA). The scope and intent of this statute serves to distinguish rights guaranteed to private citizens from those guaranteed to federal employees. Taken in conjunction with the "exclusive procedures" language and the fact that "Congress defined a

'grievance' to include ... 'any claimed violation of any law.' 5 U.S.C. § 7103(a)(9)(C)," *Carter,* 909 F.2d at 1457, this fact convinces this court that "procedures" must be interpreted to mean all procedures and not merely agency procedures.

## CONCLUSION

For the reasons discussed above, this court concurs with *Carter v. Gibbs* and finds that it lacks subject matter jurisdiction over unionized federal employees' FLSA claims. Accordingly, this action is dismissed in its entirety.

SO ORDERED.

---

**8.** In this case, plaintiffs have not yet attempted to grieve their FLSA claims.