James P. O'CONNELL; Sharon J. Adkisson; Edward R. Albertson; Agee Allen; Helen M. Allen; Charles E. Anderson; William G. Beck; Susan R. Belger; Richard T. Bond; Elizabeth F. Brendler; Anita M. Bucher; Edward R. Campbell; Jonathan B. Chase; Alan I. Cohen; Larry Day; William J. Day; Leroy E. Desoto; David K. Dober; Walter S. Dubridge; Philip W. Eagleton; Frank Estrata; Jule M. Farrar; Myles L. Flynn; Patrick M. Furlong; Thomas F. Gibson; James M. Golden; John P. Greer; Michael P. Hassey; Axel W. Henri; Russel F. Henry; James Hermansen; Don E. Hirsch; Patricia L. Huff; Charles R. Johnson; Curtis Johnson; Laura B. Jones; Joseph Joseph; Kosta M. Jovanovic; Gilbert L. Keith; John A. Kerr; Burton E. Kidd; Erwin J. Kossart; Doris Lacy–Roberts; Daniel J. Mayernik; Scott E. McIntyre; Frank J. Muscillo; Bill Negron; Lawrence J. Nicastro; Russel W. Olson; Scott C. Opdahl; Terry L. Passoni; Philip W. Perry; Brian T. Quinlan; Victor A. Safara; Kathryn M. Sanders; Robert H. Sargent; Bobeck A. Shayegani; John Shelton; William N. Siska; Bruce J. Smith; Gregory N. Stanfill; William C. Stark; James D. Stonecipher; Peter J. Tachis; Donald R. Tucker; Charles Vella–Bonavita; Maria D. Walter; Russel J. White; James D. Woolverton; Frank P. Zito; Stuart R. Adair; Barbara A. Barna; Donald J. Bastis; Linda K. Beresford; George W. Berg; Nurudeen A. Borishade; Monica M. Burke; George E. Burris; Martin A. Capp; Sigmar Chaim; John S. Chiungas; Nancy P. Coats; Alfred B. Coker; Norman T. Cole; Henry B. Cummings; James A. Davis; John T. Dorbant; Peter A. Ecklund; Gwen M. Fournier; Rita L. Fritsch; Carla D. Gallegos; Joseph S. Giaimo; Arthur Gilcrest; Daniel C. Glaspy; Ramon F. Hernandez; Edmund J. Hill; Gary E. Hill; Ann L. Houghton; Kemp B. Johnson; Catherine E. Kennedy; Joann Kishi; Daniel Landron; Henry E. Langeland; Robert W. Langford; Marie B. Lessure; Howard L. Levreau; Paula F. Lyons; Barry L. Madden; Richard J. Mariani; Daniel G. Masucci; Samuel L. Mead; Peter F. Merrigan; Randall H. Mickley; Paul H. Miller; John J. Murphy; James M. Neil; Robert F. Ollhoff; Susan A. Olsen; Raymond H. Peterson; Dennis L. Priebe; Cathy M. Purcell; Donna J. Recchia; Frank R. Remski; Richard G. Rodriguez; Ralph P. Rosenheimer; Dewayne D. Rymer; Dale W. Schaetzke; Jerry L. Schulte; Anthony C. Searing; Stacey L. Shearer; Richard J. Skurat; Stephen A. Stanek; Joseph K. Thalman; Robert M. Veaner; Hal K. Ward; Carol L. Wheeler; Thomas A. Wurn; Earl R. Zimmerman; Peter Alonso; Russell Anderson; Dale Baan; Ronald Baron; Harold Beiler; James Boyles; Gus Bubaris; Janet Burak; Scott Burns; Raymond Catoe; Stephen Catton; New Sing Chin; Rolf Clements; Anne Dwyer; John Dziadul; Carlos Escalera–Rivera; Vincent Fiattarone; Joel Finney; Raymond Golata; June Gruhn; Thomas Guy; Peter Hawkins; Lloyd Hornby; Tommie Key; Ruthanne Krusell; Tamela Lee; Victor Minelli; Diana Monteleone; Gordon Muir; Richard Pasciuto; Karen Powell; Kemon Prescott; Randall Puckett; Lawrence Reynods; Paul Sheehan; Louis Sigalos; Fred Slagle; William Spaide; Jann Swanson; John Tillotson; Judie Valliere; Robert Vaughan; Christian Wagner; Richard Walters; Dale H. Baan; Charles K. Bene; Paul J. Bonin; Sandra Buck; Nelda Carlson; Brenda J. Edmunson; Peter D. Fenn; Nancye Frank; Serapio S. Garza; Edward J. Gaughan; Jack A. Goodner; Cynthia L. Gorman; Patricia J. Latham; Fred A. McGrane; Donald C. McLeod; Michael J. Merksi; Alan Merlin; Doris R. Meyers; Sandra

Montgomery; Barbara J. Nichols; Gerald O'Connell; Margaret K. O'Neal; Michael O'Riordan; Richard F. Page; Ronald A. Pereira; Beverly Pickert; Henry Price; Bonnie B. Reneau; Charles B. Rice; Makeda S. Scales; Philip Reykdal; James M. Scott; William A. Shaffer; Antonio Sifuentes; Luigina E. Simmons; Bonnie J. Summers; Gregory Underwood; Robert E. Wallace; Don A. Waters; Paul D. Wilkins; Joseph Wizenfeld; Harold Weiner; Charles S. Worrell; William B. Worthy; John L. Aubert; Cassandra L. Bailey; Nicholas M. Baran; Donald L. Bauer; John E. Brown; Ben L. Burke; Patrick F. Cashman; Edward M. Cawley; Gordon Clark; Susan M. Chandler; James H. Corbett; Charles Devens, Jr.; Donna M. Donohue; Allyn Y. Fields; Maurice T. Fitzgerald; Alfred M. Gensch; Russell F. Godin; Francisco B. Gonzalez; John Griffin; Darlene Hampton; Patricia A. Holt; Howard Janke; Michael A. Jones; Steven Katz; E.D. Larsen; Chris Larson; David Leger; David J. Linderman; Mary S. Martin; John A. Meeks; Kevin T. McAfee; Robert E. McCarthy; David A. Ohlrich; Rita A. Paris; David Pauszek; Roger T. Pettit; Alan D. Previtali; Penny Pyle; Michael A. Rajkowski; Edwin J. Schmitz; Patrick Schoenstene; Rickey H. Shinn; James F. Stocke; Carolyn Swangler; Carol L. Taiman; Thomas A. Terrell, Jr.; Catherine E. Tymins; Robert E. Wallace; Patricia C. Whitson; Helmut Wolfram; Bonnie Andrews; Darrel W. Borden; Beverly Boyd; John Frohock; Julie M. Gibson; Milton R. Gurney; Charles C. Greening; Barbara J. Hampton; William R. Harding; Lynn Harris; Kenneth R. Hoover; Walter C. Kiernan; Ronnie M. Lang; Jeanne M. Mathews; Helen Moomjian; William K. Sayers; Shirley L. Small; Alan J. Bilskie; James C. Boyles; Donna A. Cater; Larry Day; Karen J. Eastman; William Flanagan; Raymond H. Goulet; Melvina S. Hamilton; Kirk L. Holt; Michael Klobosits; Harvey D. Morrison; Julius R. McClaskey; Kathryn R. O'Shaughnessy; Jeffrey A. Peterson; Patricia J. Potter; John I.

Riedle; Bobby H. Schiff; Janet M. Sevigny; Paul L. Shea; Rodney W. Tuttila; Thomas B. Alexander; Elizabeth J. Alfonso; Gregory S. Brown; Kevan S. Corson; Vicki T. Dyer; Stephen K. Fraher; Kathleen A. Green; Myra D. Griffith; Edward Iannone; Cynthia Martin; Charron McIntosh; Alberto Navarrete; Madeleine M. Noyer; Carolene Panduren; Lloyd Reiman; Richard J. Roberts; Judy C. Ruiz; Joseph T. Supil; Mark Trail; Linda S. Word; James P. Barron; Ed B. Chandler; Edwin D. Macewan; Frederick C. Marden and Bruce U. Sanderson, Plaintiffs–Appellants,

v.

Andrew C. HOVE, Jr., in his capacity as Acting Chairman, Federal Deposit Insurance Corporation and Federal Deposit Insurance Corporation, Defendants–Appellees.

No. 1079, Docket 93–6191.

United States Court of Appeals, Second Circuit.

Argued Jan. 27, 1994.

Decided April 19, 1994.

**466**

Elaine Kaplan, Washington, DC (Gregory O'Duden, Nat. Treasury Employees Union, of counsel) for plaintiffs-appellants.

Thomas A. Schultz, Washington, DC (Robert G. Clark, Daniel F. Ross, Gregory F. Taylor, Federal Deposit Insurance Corporation, of counsel) for defendants-appellees.

Before: WALKER, JACOBS, Circuit Judges, and DALY, District Judge.*

JACOBS, Circuit Judge:

Plaintiffs are employees of the Federal Deposit Insurance Corporation ("FDIC") who claim that the FDIC improperly classified their jobs as exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 (1982). Upon motion by the FDIC, and after a hearing, the United States District Court for the Eastern District of New York (Glasser, J.) dismissed the complaint for lack of subject matter jurisdiction, finding that Title VII of the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 7101–35 (1988) requires plaintiffs, all of whom are members of the National Treasury Employees Union (the "Union"), to follow the negotiated grievance procedures set out in the Union's collective bargaining agreement with the FDIC. The employees appeal, and we affirm.

## Background

Section 7(a)(1) of the FLSA requires that employees covered by that statute be paid one and one-half times their regular hourly rate of pay if they work more than forty hours during a work week. 29 U.S.C. § 207(a)(1). However, employees whose work meets certain statutory criteria are exempted from this provision. 29 U.S.C. § 213. When such exempt employees of the federal government do work overtime, they are compensated in accordance with the Federal Employment Pay Act ("FEPA"). 5 U.S.C. § 5542 (1982). Plaintiffs allege that the FDIC improperly classified them as exempt from the overtime provisions of the FLSA, that they are worse off under the FEPA compensation scheme than they would be under the FLSA, and that they have worked a significant number of overtime hours, or contemplate doing so if the FDIC were to pay the statutorily mandated overtime rates.

As members of the National Treasury Employees' Union, plaintiffs are covered by a collective bargaining agreement with the FDIC. Although the agreement provides for comprehensive grievance procedures, none of the appellants have pursued grievance procedures in this case, having chosen instead to litigate their claims in federal district court. It is this choice which raises the jurisdictional issue that is the subject of this appeal.

In a well reasoned memorandum and order, the district court concluded that, under the CSRA, the grievance procedures contained in the collective bargaining agreement provide the exclusive remedy for their claims. *O'Connell v. Hove,* 821 F.Supp. 862 (E.D.N.Y.1993). Therefore, according to the district court, a federal court lacks subject matter jurisdiction to hear plaintiffs' claims. We agree. Because this is a case of first impression in this Circuit we will outline and address the issues raised by plaintiffs in some detail. As the district court noted, the U.S. Court of Appeals for the Federal Circuit has on several occasions addressed the precise issue of this appeal. *See Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.) (*in banc*), *cert. denied, Carter v. Goldberg,* 498 U.S. 811, 111

* Honorable T.F. Gilroy Daly, of the United States District Court for the District of Connecticut, sitting by designation.

**467**

S.Ct. 46, 112 L.Ed.2d 22 (1990); *Adams v. United States,* 979 F.2d 840 (Fed.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993); *Aamodt v. United States,* 976 F.2d 691 (Fed.Cir.1992); *Muniz v. United States,* 972 F.2d 1304 (Fed.Cir. 1992).

### Discussion

Plaintiffs' claim is rooted in the overtime provision of the FLSA:

> Except as otherwise provided ... no employer shall employ any of his employees who in any workweek ... [works] longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). A 1974 amendment to the FLSA made it applicable to federal employees. Pub.L. 93–259, § 6, codified at 29 U.S.C. § 203(e)(2). Section 16 of the FLSA provides that employees aggrieved by a failure to pay the overtime mandated in the statute *may maintain an action for unpaid compensation plus an equal amount as liquidated damages "in any Federal or State court of competent jurisdiction ..."* 29 U.S.C. § 216(b).

The FLSA contains numerous listed exemptions to its overtime mandate provision, such as people employed in executive or administrative capacities and people who sell automobiles, boats, and aircraft. 29 U.S.C. § 213. Federal employees who are properly classified as exempt from the FLSA overtime provision are compensated for overtime under the FEPA, 5 U.S.C. § 5542, which provides two rate calculations, depending on the employee's basic pay rate. An employee whose basic pay does not exceed the minimum basic pay for a GS–10 is compensated for overtime work at one and one-half times that employee's basic pay rate. 5 U.S.C. § 5542(a)(1). All of the plaintiffs have a basic pay that exceeds the minimum basic pay at GS–10. Under FEPA, their overtime compensation is limited to one and one-half times the minimum basic hourly rate at GS–10. 5 U.S.C. § 5542(a)(2). Plaintiffs invoke federal jurisdiction under § 16(b) of the

FLSA, 29 U.S.C. § 216(b), to redress their claim that the FDIC wrongfully classified their work as falling within the exceptions to the FLSA.

■ The question presented is whether the CSRA treats the FLSA overtime claims of unionized federal employees as subject exclusively to the negotiated grievance procedures set forth in the collective bargaining agreement absent a provision to the contrary in the agreement, and thereby limits their access to the courts under FLSA section 16. In other words, does the CSRA require that federal employees who wish to preserve their right to enforce FLSA claims in the courts negotiate through their unions for the inclusion of an express statement to that effect in the collective bargaining agreement?

### A. The CSRA

The Supreme Court has "recognized that the CSRA 'comprehensively overhauled the civil service system,' ... creating an elaborate 'new framework for evaluating adverse personnel actions against [federal employees].'" *United States v. Fausto,* 484 U.S. 439, 443, 108 S.Ct. 668, 671, 98 L.Ed.2d 830 (1988) (quoting *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 773–74, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985)). This Act "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *Id.*

The CSRA requires that all collective bargaining agreements establish grievance procedures. 5 U.S.C. § 7121(a)(1). It is undisputed that plaintiffs' overtime claim under the FLSA falls within the Act's definition of "grievance," which

> means any complaint—
>
> (A) by any employee concerning any matter relating to the employment of the employee;
>
> (B) by any labor organization concerning any matter relating to the employment of any employee; or
>
> (C) by any employee, labor organization, or agency concerning—
>
>   *   *   *   *   *   *

(ii) any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment.

5 U.S.C. § 7103(a)(9). The critical phrase to be construed in this appeal is the CSRA provision that the grievance procedures in a collective bargaining agreement "shall be the *exclusive procedures* for resolving grievances which fall within [their] coverage." 5 U.S.C. § 7121(a)(1) (emphasis added). The CSRA does permit an agreement to "exclude any matter from the application of the grievance procedures which are provided for in the agreement." 5 U.S.C. § 7121(a)(2). But there is no such exclusion for FLSA claims in the Union's agreement with the FDIC.

■ We are guided by the axiom that " 'the starting point in every case involving construction of a statute is the language itself.' " *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). "When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." *Demarest v. Manspeaker,* 498 U.S. 184, 190, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991) (citations omitted). The "strong presumption that the plain language of the statute expresses congressional intent" can only be rebutted "when a contrary legislative intent is clearly expressed." *Ardestani v. Immigration and Naturalization Service,* — U.S. ——, ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (citations omitted).

Under the plain language of the exclusivity provision, federal jurisdiction over plaintiffs' claim depends upon the collective bargaining agreement and whether or not the parties negotiated to exclude FLSA overtime claims from the broad category of disputes arbitrable as grievances. That is what the district court held. On appeal, plaintiffs point to the equally clear language of the FLSA conferring jurisdiction on federal and state courts of competent jurisdiction, and argue that repeal by implication is strongly disfavored. Plaintiffs' other major arguments urge us to reconcile the two statutes by considering the

exclusivity provision of the CSRA in light of its legislative history and its statutory context. These contextual and historical insights, they argue, demonstrate that the exclusivity provision was intended only to limit the employees' right of access to certain *administrative* remedies, and was not intended to affect their right to assert claims in a judicial tribunal.

## B. Repeal by Implication

■ Section 16 of the FLSA confers jurisdiction on state and federal courts to resolve overtime disputes of a kind that the district court, relying upon the later-enacted CSRA, has dismissed for lack of jurisdiction. *See* 29 U.S.C. § 216(b). Plaintiffs argue that the CSRA should not be construed to effect a repeal by implication of the FLSA, and cite the strong presumption "that Congress will specifically address language in the statute books that it wishes to change." *Fausto,* 484 U.S. at 453, 108 S.Ct. at 676 (1987).

The district court opinion gives effect to the "interplay" between the two statutes, 821 F.Supp. at 863; it does not construe one as repealing the other. Section 7 of the FLSA confers a substantive right concerning overtime compensation upon federal employees as well as upon private-sector employees, and section 16 confers jurisdiction on courts to vindicate that right. 29 U.S.C. §§ 207, 216(b). Nothing in the CSRA affects the substantive right; plaintiffs may assert that right in the grievance process. Nothing in the CSRA affects any remedy of private-sector employees, or of federal employees who are not union members. Although the CSRA requires that procedures be established under collective bargaining agreements to resolve the grievances of unionized federal employees, nothing in the CSRA prevents the plaintiff employees of the FDIC (acting through their union) from negotiating to remove some or all FLSA claims from the grievance procedure; and if they do, they would need and would be able to invoke the grant of jurisdiction in section 16 of the FLSA. In short, CSRA § 7121(a) does not repeal section 16 of the FLSA, and the district court opinion cannot be read to assume such a repeal.

The CSRA does impose a condition that potentially impairs plaintiffs' ability to avail themselves of the judicial remedies created for their benefit in the FLSA, and it does so without any express Congressional recognition that the second statute will affect rights under the first. Plaintiffs contend that that potential impairment of an existing right is a repeal (which it is not) and that Congress's failure to address the impact of the CSRA on FLSA rights demonstrates that none was intended. However, "[a] leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." *Fausto,* 484 U.S. at 444, 108 S.Ct. at 672 (quoting S.Rep. No. 969, 95th Cong., 2nd Sess., 3 (1978), 1978 U.S.C.C.A.N. 2723, 2725). It would be better if Congress were to map each intended impact on existing legislation (direct or incidental) when it revamps so complex a network of statutes and regulations, but we cannot deduce from its failure to do so a Congressional intent that the new statute is to be simply an overlay to an unaffected body of existing rights and remedies.

## C. Legislative History

The exclusivity language is virtually identical to the language of an executive order that predated the CSRA. That executive order provided that collective bargaining agreements must establish grievance procedures that "shall be the exclusive procedure available" to resolve grievances. Executive Order 11491, § 13(a), *reprinted in Legislative History of the Federal Service Labor–Management Relations Statute, Title VII of the Civil Service Reform Act of 1978,* 96th Cong., 1st Sess. 1346 (Comm.Print.1979). Plaintiffs argue that the counterpart provision of the CSRA was evidently derived from Executive Order 11491, that Executive Order 11491 established the contractual grievance mechanism as the exclusive procedure only in respect of claims that would otherwise be resolved administratively, that Executive Order 11491 was never viewed as having "any preemptive effect upon judicial rights of action," and that the same language should not be construed more broadly as used in the CSRA. If (as plaintiffs argue) the exclusivity clause in Executive Order 11491 has been narrowly construed, that may be because it is preceded by language that is conducive to plaintiffs' reading of that clause, but that Congress did not include in the CSRA:

> An agreement between an agency and a labor organization shall provide a procedure, applicable only to the unit, for the consideration of grievances. *The coverage and scope of the procedure shall be negotiated by the parties to the agreement with the exception that it may not cover matters for which a statutory appeal procedure exists* and so long as it does not otherwise conflict with statute or this order. It shall be the exclusive procedure available to the parties and the employees in the unit for resolving grievances which fall within its coverage....

Executive Order No. 11491, § 13(a) (emphasis added). Plaintiffs' reliance on Executive Order 11491 thus proves too much. If it were significant that Congress borrowed the exclusivity language, it would be just as telling that Congress did not take the related language that allowed the parties to negotiate "the coverage and scope" of the grievance procedures, and barred them from consigning to grievance procedures disputes for which a statutory appeal procedure exists. The CSRA is different in design, and provides that the grievance mechanism will resolve *all* disputes that fall within the statutory definition of "grievance" unless expressly excluded by the parties.

Plaintiffs also reference several statements from various Congressional sources to support the view that the exclusivity provision of the CSRA is concerned with administrative claims rather than with rights to pursue judicial remedies. For instance, appellants point to a statement from a Conference Report on the CSRA, explaining that § 7121(a)(1) will mean that "except for certain specified exceptions, an employee covered by a collective bargaining agreement must follow the negotiated procedures rather than the agency procedures available to other employees not covered by an agreement." H.R.Rep. No. 1717, 95th Cong., 2d Sess. 157

(1978), U.S.Code Cong. & Admin.News 1978, 2860, 2891. The negative pregnant of that statement is suggestive, but we find plaintiffs' historical argument ultimately unpersuasive. To rebut a construction derived from clear and unambiguous statutory language, a party must show that a contrary legislative intent is clearly expressed. *Immigration & Naturalization Service v. Cardoza–Fonseca,* 480 U.S. 421, 432, n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987). Moreover, as we have emphasized, " 'only the most extraordinary showing' of a contrary intention from the legislative history would justify interpretive departure from a statute's plain language." *United States v. Koehler,* 973 F.2d 132, 134 (2d Cir.1992) (quoting *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)). Nothing offered in plaintiffs' thorough briefs approaches the clarity we require. Accepting plaintiffs' construction of this law would require us to "substitute a strained interpretation of the legislative history for the plain language of the statute." *Greenberg v. Comptroller of the Currency,* 938 F.2d 8, 11 (2d Cir.1991).

**D. Context**

■ The CSRA creates a number of express exceptions to the exclusivity provision. Plaintiffs demonstrate that in each instance, the alternative to the contractual remedy is an administrative proceeding. Since all of the listed exceptions to exclusivity are subject to administrative remedy, and since none of the listed exceptions is subject to a judicial remedy, plaintiffs invite us to conclude that the scope of the exclusivity provision does not pertain to judicial remedies in the first place. Some of the exceptions to this provision appear in §§ 7121(d) and (e), which list disputes as to which an employee either may assert grievances by contract or else take them up in administrative proceedings:

> (d) An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) [discrimination] of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure but not both. . . .

> (e)(1) Matters covered under sections 4303 [unacceptable performance] and 7512 [disciplinary action] of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated procedure, but not both. Similar matters which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure, but not both.

5 U.S.C. §§ 7121(d), (e)(1). Section 7121(c) lists five categories of disputes as to which the negotiated grievance procedures are inapplicable:

> (c) The preceding subsections of this section shall not apply with respect to any grievance concerning—(1) any claimed violation of subchapter III of chapter 73 of this title (relating to prohibited political activities); (2) retirement, life insurance, or health insurance; (3) a suspension or removal under section 7532 of this title; (4) any examination, certification, or appointment; or (5) the classification of any position which does not result in the reduction in grade or pay of an employee.

5 U.S.C. § 7121(c).

As plaintiffs argue, "[e]mployees have no statutorily-based judicial cause of action for any of these matters . . . ." That goes little distance, however, toward demonstrating that § 7121's exclusivity language does not apply to FLSA overtime claims. As the Federal Circuit concluded, a ruling favorable to plaintiffs would require us to recast the CSRA in order to augment the reach of the FLSA:

> Properly put, the question here is not whether the CSRA implicitly repealed section 16 of the FLSA; it is whether an additional exception to CSRA section 7121(a)(1)'s exclusivity provision should be implied, an exception allowing review of overtime claims both in the courts and through the negotiated procedures. The answer is no.

*Carter,* 909 F.2d at 1455. We adopt the question as well as the answer. The district court notes (without evaluating) the undeniably interesting fact that "Congress initially included FLSA claims in [§ 7121(c) ] but then omitted those claims without any explanation." 821 F.Supp. at 868; *see also Carter,* 909 F.2d at 1455. No one can tell whether Congress excised that express provision because Congress affirmatively wished to make FLSA claims subject to the exclusivity provision of the CSRA or because (as plaintiffs argue) such claims were not subject to it in the first place. Deciding that issue one way or the other would entail an exercise of pure inspiration. We hold simply that the CSRA provides a limited number of exemptions from the otherwise comprehensive exclusivity provision, and that FLSA claims are not among them.

### E. Other Arguments

■ Because we concur in the Federal Circuit's reasoning, as expressed in its *in banc* decision of *Carter v. Gibbs,* we address only briefly plaintiffs' remaining arguments. First, plaintiffs argue that the FLSA grants them "an unfettered, non-waivable right to judicially enforce their overtime claims," supposedly established in *Atchison, Topeka & Santa Fe R.R. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). We agree with the Federal Circuit, that "reliance on [these cases], all dealing with private sector labor disputes, is misplaced." *Carter,* 909 F.2d at 1457. The issue in *Barrentine* was whether a provision in a collective bargaining agreement, requiring the submission of "any controversy" to the negotiated grievance procedures, barred a private FLSA action in district court. The issue in *Alexander* was whether a private party who had submitted a claim to arbitration pursuant to a collective bargaining agreement could then pursue a trial *de novo* in federal court under Title VII of the Civil Rights Act of 1964. Neither of those cases involved the CSRA, nor any other comprehensive statute regarding labor-management

relations, *Atchison, Topeka* is equally inapposite. In that case, the Court considered whether the existence of grievance arbitration procedures in the Railway Labor Act ("RLA") precluded employees from bringing a lawsuit under the Federal Employers' Liability Act for unsafe working conditions. However, unlike the CSRA, the RLA does not define "grievance" to include violations of law (indeed it does not define grievance at all), and it contains no exclusivity provision.

"Under the CSRA, however, the rights of a unionized federal employee are consolidated within the four corners of the collective agreement: Congress defined a 'grievance' to include contractual disputes and 'any claimed violation ... of any law.'" *Carter,* 909 F.2d at 1457 (quoting 5 U.S.C. § 7103(a)(9)(C)). Congress—for whatever reason—chose not to exclude FLSA claims from the scope of the contractual grievance procedures. Congress did, however, leave it to the Union to negotiate for exclusion of FLSA claims from the grievance process; the Union, implicitly if not explicitly, chose not to do so. Having made that choice, its members must now abide by the terms of their collective bargaining agreement, as informed by the CSRA.

■ Finally, appellants argue that we must permit them to pursue their claims in court, because the negotiated grievance procedures are inferior, and will lead to an imbalance in FLSA enforcement between unionized federal employees and all other workers. First, as discussed above, and as the Federal Circuit points out, "the CSRA expressly defines grievances to include violations of law." *Carter,* 909 F.2d at 1457. Second, we are not in a position to determine what statutorily-mandated remedies for statutorily-created rights are better or worse than others; nor could we substitute one remedy for another if we formed such a view. Finally, the CSRA contemplates that unions unwilling to confine FLSA issues to the grievance procedures they negotiate can negotiate to preserve judicial remedies. If, as plaintiffs fear, their union may fail to fairly represent their individual interests (out of a concern that such interests may conflict with the collective interests of the Union), appel-

**472**

lants may then have recourse to other statutory protections. *See* 5 U.S.C. §§ 7114(a)(1), 7116(b)(8), 7118; *Karahalios v. Nat. Fed. of Federal Emp., Local 1263*, 489 U.S. 527, 531–32, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989) ("a breach of the duty of fair representation is an unfair labor practice" under the CSRA).

■ More fundamentally, it is unclear why a statutory reading that results in a supposed imbalance in enforcement of FLSA rights as between public and private employees is less sound that one that strikes a balance. The law does not require parity between the private and public employment sectors. *See, e.g., Karahalios,* 489 U.S. at 535–36, 109 S.Ct. at 1288 ("[F]ederal employment does not rest on contract in the private sector sense; nor is it clear that the deprivation a federal employee suffers from the election of a bargaining agent—if there is such a deprivation—is comparable to the private sector predicament."). Congress has enacted a comprehensive statutory scheme governing management-labor relations in the federal government. Even assuming "a federal right has been violated and Congress has provided a less than complete remedy for the wrong," we cannot second-guess such public policy decisions. *Bush v. Lucas,* 462 U.S. 367, 373, 103 S.Ct. 2404, 2409, 76 L.Ed.2d 648 (1983). Rather, the judiciary must "heed[ ] 'the Supreme Court's admonitions to leave the architecture of the federal personnel system to Congress.' ... [We must] 'abstain completely from inventing other remedies when Congress has set up a complete, integrated statutory scheme.' " *Carter,* 909 F.2d at 1456 (quoting *Volk v. Hobson,* 866 F.2d 1398, 1402–03 (Fed.Cir.), *cert. denied,* 490 U.S. 1092, 109 S.Ct. 2435, 104 L.Ed.2d 991 (1989)).

### Conclusion

For the reasons stated in this opinion, the district court's order dismissing appellants' complaint for lack of subject matter jurisdiction is affirmed.