Dennis J. ABBOTT, III, et al.,
Plaintiffs, Appellants,

v.

UNITED STATES of America, et
al., Defendants, Appellees.

No. 97–2254.

United States Court of Appeals,
First Circuit.

Heard March 2, 1998.

Decided April 27, 1998.

James G. Noucas, Jr., with whom Christopher W. Keenan and Noucas & Keenan were on brief, for Plaintiffs.

Deborah Ruth Kant, Attorney, Department of Justice, with whom Frank W. Hunger, Assistant Attorney General, Jay P. McCloskey, United States Attorney, and Barbara C. Biddle, Attorney, Department of Justice, were on brief, for Defendant the United States.

Julia Akins Clark, for Defendant International Federation of Professional and Technical Engineers, AFL–CIO & CLC, Local 4.

Before LYNCH, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

**2**

LYNCH, Circuit Judge:

Engineering and technical employees at the Portsmouth Naval Shipyard felt they were not being paid overtime to which they were entitled. Their union filed a grievance and asked the employees specifically to notify the union if they wished to be part of the grievance. The union also used language which implied that those employees who did not join this grievance could later file grievances. A settlement was reached of the union grievance: from November 12, 1993 forward, each employee in these categories would receive overtime pay, but only those individuals who had joined the grievance would receive compensation for overtime past due and owed up to that date.

This lawsuit is by those who did not join in the union grievance, trying to recover past overtime pay for the period up to November 12, 1993. In 1996, these employees filed suit against both the United States and the union. The suit proceeds under the special sets of laws which govern the federal employees at the Shipyard, and those laws determine the outcome. Congress enacted a comprehensive remedial scheme for such claims, a scheme which requires that we affirm the dismissal of the action against the union; we also affirm dismissal against the United States on statute of limitations grounds.

## I. Background

■ In reviewing the district court's decision to grant the defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(6), we take all well-pleaded facts in the complaint to be true, but need not credit the complaint's "bald assertions" or legal conclusions. *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir.1996).

Plaintiffs are a group of over one hundred present and former employees at the Portsmouth Naval Shipyard. The United States Navy owns the Portsmouth Naval Shipyard. Plaintiffs are or were members of defendant union, the International Federation of Professional and Technical Engineers, AFL–CIO

& CLC, Local 4. The union is the exclusive bargaining agent for certain professional and technical federal employees at the Shipyard.

This saga starts in November of 1985, when the Fair Labor Standards Act regulations of the United States Office of Personnel Management became effective. These regulations presumed that federal employees at the GS–11 level and above were exempt from the overtime pay provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. Under the provisions of FLSA § 7(a)(1), covered employees must be paid one and one-half times their regular hourly wage if they work more than forty hours in a work week. *See* 29 U.S.C. § 207(a)(1). Federal employees exempted from this provision, however, are compensated for overtime work in accordance with the (less generous) Federal Employment Pay Act. *See* 5 U.S.C. § 5542. The OPM regulations were invalidated in 1987, *see American Fed'n of Gov't Employees v. Office of Personnel Management*, 821 F.2d 761 (D.C.Cir.1987), but the "exempt" status of the plaintiffs as GS–11 or higher pay grade employees was not changed.[1]

In 1990, the Federal Circuit held that under the Civil Service Reform Act, Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in various sections of 5 U.S.C.) ("CSRA"), the grievance procedure in a collective bargaining agreement was the exclusive forum for the resolution of FLSA claims, unless the grievance procedure explicitly excluded FLSA claims. *See Carter v. Gibbs*, 909 F.2d 1452, 1458 (Fed.Cir.) (en banc), *cert. denied sub nom. Carter v. Goldberg*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). The union, accordingly, filed a grievance as provided in its collective bargaining agreement, in September of 1990. The grievance challenged the Shipyard's classification of the bargaining unit employees as "exempt" from the overtime pay requirements of the FLSA.

The union advised its members about the status of the grievance. In the summer of 1992, the union circulated a bulletin stating, "This is also a 'last call' for all who have not

---

**1.** An automatic change in the plaintiffs' status was not required by the invalidation of the regulations. As the United States Claims Court concluded, "[i]t does not logically follow, just because OPM adopted the ill-fated regulation, that a given employee is nonexempt." *Abundis v. United States*, 18 Cl.Ct. 657, 664 (1989).

filed a grievance and would like to join in. If you do not file at this time, you will not be considered in this case. Another grievance will have to be filed at a later date." Plaintiffs did not participate in this grievance. Plaintiffs assert that the union's communications led them to believe that their interests would be protected by the union in the pending grievance, or that they would be able to file a subsequent grievance.

In November of 1993, the union and the United States entered into a settlement agreement, memorialized in a memorandum of understanding ("MOU"), which resolved the pending grievance. The MOU classified the listed grievants as non-exempt and awarded them back pay for overtime for up to six years. The MOU classified employees not listed in the grievance as non-exempt from November 12, 1993, thus agreeing that they would get overtime from that date forward. But the MOU precluded them from receiving, or filing new grievances for, FLSA overtime back pay for work done prior to November 12, 1993.[2]

In a letter dated June 2, 1994, plaintiffs requested arbitration of their grievances concerning the 1993 MOU under the collective bargaining agreement between the union and the Shipyard. This request for arbitration was denied by the Shipyard in a letter dated August 23, 1994, on the ground that the issue had been resolved by the MOU and the plaintiffs did not have authority to invoke arbitration under the terms of the collective bargaining agreement between the union and the Shipyard. The plaintiffs renewed their request in a letter dated September 7, 1994, and this request was again turned down by the Shipyard in a letter dated October 28, 1994.

Plaintiffs had also filed unfair labor practice claims against the Shipyard and the union with the Federal Labor Relations Authority ("FLRA") in May of 1994. The FLRA denied the plaintiffs' appeal on May 31, 1994. According to the FLRA, there was "no reason to conclude that the grievance settlement … violates the Statute or that either the Shipyard or Local 4 violated the protected rights of any bargaining unit employees by entering into that settlement…. [N]othing suggests that [the settlement] was arrived at arbitrarily or discriminatorily or that it was based on any considerations prohibited by the Statute."

Some of the plaintiffs also sought to be included in a "global settlement" of FLSA issues that was negotiated between the International Federation of Professional and Technical Engineers and the Naval Sea Systems Command on a national level.[3] This process resulted in a partial "global settlement" dated July 20, 1995, and in a final "Global Memorandum of Understanding" dated December 6 and 7, 1995. These plaintiffs were not included in the global settlement or the global MOU because their claims were declared by the Navy to have been settled in the November, 1993 MOU.

Plaintiffs then filed suit against the union and the United States in United States District Court for the District of Maine on March 13, 1996. The plaintiffs alleged that each of them had either filed a grievance based on the settlement of the union's 1990 grievance, filed unfair labor practice claims against the defendants based on their handling of the 1990 union grievance, or were "listed grievants" in the 1990 union grievance who were dropped from the grievance by the union. Plaintiffs sought declaratory relief establishing that the November 1993 MOU is

2. In the words of the MOU: "All other Unit employees are precluded from being added to the grievances resolved by this Memorandum of Understanding or from filing new grievances in an attempt to receive FLSA overtime back pay for the time period preceding the date of this Memorandum of Understanding."

3. Over 500 current and former federal employees who worked in technical, engineering, and related fields in various locations sued the United States in federal court on January 13, 1988,

claiming that they were owed back overtime pay under the Fair Labor Standards Act. The plaintiffs in this suit were classified as "nonexempt" under the OPM regulations, and were members of bargaining units having collective bargaining agreements with the government. The Federal Circuit held that the employees were required to pursue their back pay claims through the negotiated grievance processes provided for in their collective bargaining agreements. *See Aamodt v. United States,* 976 F.2d 691 (Fed.Cir.1992).

illegal and invalid to the extent that it precluded them from seeking overtime back pay under the FLSA and the Back Pay Act, 5 U.S.C. § 5596. Against the United States, the plaintiffs also sought monetary relief, including overtime back pay with interest, statutory liquidated damages, and attorney's fees.

Both the union and the United States moved to dismiss the complaint under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. The union contended that the complaint failed to establish subject matter jurisdiction or to state a claim upon which relief may be granted. The United States alleged that the plaintiffs had failed to establish subject matter jurisdiction and proper venue, and had raised claims that were barred by the applicable statute of limitations. After the plaintiffs amended their complaint to allege jurisdiction under 28 U.S.C. § 1331, the United States argued that the court nonetheless did not have subject matter jurisdiction.

The district court referred the case to a magistrate. The district court adopted the recommended decision of the magistrate judge and granted the defendants' motions to dismiss. The district court decided the motions as motions to dismiss for failure to state a claim. As to the union, the court held that the complaint failed to state a claim upon which relief could be granted because it was tantamount to a claim that the union had breached its duty of fair representation, and, under the CSRA, the grievance procedure established by the collective bargaining agreement is the exclusive route available to plaintiffs to resolve their FLSA claims.

As to the United States, the court found the statute of limitations to be dispositive. The court held that the two year statute of limitations imposed by § 255(a) of the FLSA barred the plaintiffs' claims under the FLSA, all of which accrued more than two years before the action was filed in federal court. The court concluded that the pendency of administrative proceedings, i.e., the grievances, did not toll the FLSA's limitations period.

## II. The Claims Against the Union

The action against the union was dismissed because the claim was viewed as a duty of fair representation claim masquerading in different garb. No duty of fair representation claim could be sustained in federal court for two reasons.

The first reason is that the remedy for any breach of the duty of fair representation lies with the Federal Labor Relations Authority. *See* 5 U.S.C. § 7118. Congress assigned this task to that agency as part of the overall scheme in the CSRA. Under the CSRA, the union is the exclusive representative of bargaining unit employees. And the union, in turn, owes a duty of fair representation:

> A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.

5 U.S.C. § 7114(a)(1). A breach of the duty of fair representation is an "unfair labor practice." *See* 5 U.S.C. § 7116(b)(8). And unfair labor practices are to be adjudicated by the FLRA.

The second reason is that, as the Supreme Court has held, no parallel private cause of action may be implied from the CSRA. *See Karahalios v. National Fed'n of Fed. Employees*, 489 U.S. 527, 533, 109 S.Ct. 1282, 1286–87, 103 L.Ed.2d 539 (1989) ("[N]either the language nor the structure of the [CSRA] shows any congressional intent to provide a private cause of action to enforce federal employees unions' duty of fair representation.").

Thus, while the duty itself "parallels the fair representation obligation of a union in the private sector that has been found implicit in the National Labor Relations Act (NLRA)," *id.* at 532, 109 S.Ct. at 1286, the places to seek remedies for a violation of the duty of fair representation vary. If the CSRA and a covered federal employee are

involved, as here, recourse is to the FLRA: "There exists no equivalent to § 301 of the Labor Management Relations Act ... which permits judicial enforcement of private collective-bargaining contracts." *Id.* at 534, 109 S.Ct. at 1287. "Consequently, district courts cannot entertain federal employees' fair representation suits." *Montplaisir v. Leighton,* 875 F.2d 1, 5 (1st Cir.1989) (citation omitted).

The enactment of the CSRA " 'comprehensively overhauled the civil service system' ... creating an elaborate 'new framework for evaluating adverse personnel actions against federal employees.' " *United States v. Fausto,* 484 U.S. 439, 443, 108 S.Ct. 668, 671–72, 98 L.Ed.2d 830 (1988) (quoting *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 773, 774, 105 S.Ct. 1620, 1624–25, 84 L.Ed.2d 674 (1985)). In some respects, the Act gives federal employees greater protections than private sector employees. In other respects, it alters the forum in which claims may be brought and the procedures used. *See Roth v. United States,* 952 F.2d 611 (1st Cir.1991) (CSRA preempts state law claim); *Montplaisir,* 875 F.2d at 8 (same). At times, federal employees must meet a more rigorous standard in order to obtain injunctive relief. *See Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (discussed in *DeNovellis v. Shalala,* 135 F.3d 58, 62 (1st Cir.1998)).

The plaintiffs do not dispute that this general statement is indeed the law for duty of fair representation claims, but argue that they have been misunderstood. First, they say, they are different from plaintiffs in other cases such as *O'Connell v. Hove,* 22 F.3d 463 (2d Cir.1994), because they have actually exhausted their administrative remedies. Secondly, they say, the CSRA procedures failed due to violations and misinterpretations of federal law. More specifically, citing *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), they claim the union could not waive the individual rights of union members under the FLSA to get overtime back pay.

In this, it is the plaintiffs who misapprehend the law, not the district court. We start with the plaintiffs' last attempted distinction. In *Barrentine,* a 1981 decision, the Supreme Court held that a private sector employee could bring a federal court action alleging a violation of the minimum wage provisions of the FLSA after having unsuccessfully submitted the same claim to a grievance committee under the collective bargaining agreement. *Barrentine* was a private sector case, not involving a federal employee covered by the CSRA, and expressly recognized that the statutory enforcement scheme granted broad access to the courts, and "[n]o exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute." 450 U.S. at 740, 101 S.Ct. at 1444. Here, in contrast, another forum for enforcement of statutory rights of a duty of fair representation is contemplated by the statute and no implied right of action may be inferred from the CSRA.

The contention that this is just an exhaustion of administrative remedies case is also misplaced. *Karahalios* prevents such an argument. As *Karahalios* points out, the CSRA at Title VII:

provides recourse to the courts only in three instances: with specified exceptions, persons aggrieved by a final FLRA order may seek review in the appropriate court of appeals, § 7123(a); the FLRA may seek judicial enforcement of its orders, § 7123(b); and temporary injunctive relief is available to the FLRA to assist it in the discharge of its duties, § 7123(d).

489 U.S. at 532, 109 S.Ct. at 1286. None of those situations exist here. When the plaintiffs filed their duty of fair representation complaint with the FLRA, the General Counsel decided not to issue a complaint. But "the General Counsel of the FLRA was to have exclusive and final authority to issue unfair labor practice complaints, and only those matters mentioned in § 7123 were to be judicially reviewable." *Id.* at 533, 109 S.Ct. at 1287 (citation omitted). The matter ends when the General Counsel of the FLRA decides not to issue a complaint.

There remains the argument that the strong federal interest in fair pay for employees found in the FLSA should trump the administrative scheme in the CSRA where

there is a claim against the union. The Supreme Court has also foreclosed that argument in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). In *Fausto,* the Court held that an employee seeking back wages under the Back Pay Act, 5 U.S.C. § 5596, may not bring an action in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491, in light of the "comprehensive system" established by the CSRA.

■ We hold here that federal claims under the FLSA against the union involving overtime pay and the union's duty of fair representation may not be brought in federal court due to the comprehensive scheme of the CSRA.

III. The Claims Against the United States

■ The claims against the United States stand on different footing. It is arguable that there may be jurisdiction under the Tucker Act or the "Little Tucker Act," 28 U.S.C. § 1346(a)(2).[4] If so, then jurisdiction would lie in the U.S. Court of Federal Claims and appellate jurisdiction in the Federal Circuit. But plaintiffs did not purport to rely on the Tucker Act, and have asserted colorable federal claims, and so, as the government has conceded, we have jurisdiction to consider this appeal. *See Northeast Erectors Ass'n v. Secretary of Labor,* 62 F.3d 37, 39 n. 1 (1st Cir.1995); *Chabal v. Reagan,* 822 F.2d 349, 355 (3d Cir.1987).

■ The district court, in a thoughtful opinion, dismissed the action against the

4. The sort of claims asserted by the plaintiffs against the government may also be precluded by the CSRA. *See O'Connell,* 22 F.3d 463; *Carter,* 909 F.2d 1452. Indeed, the situation of these plaintiffs is very similar to that of the Albrecht appellants in *Muniz v. United States,* 972 F.2d 1304, 1314–18 (Fed.Cir.1992). In *Muniz,* the court held broadly that: "Claims arising under collective bargaining agreements must be excluded from mandatory exclusive grievance and arbitration procedures in order for the courts to have jurisdiction to hear such claims." *Id.* at 1316. "Furthermore," the court said, "such an exclusion must be explicit and unambiguous." *Id.* If a collective bargaining agreement excludes FLSA claims from its scope, then the CSRA proceedings do not apply. In such circumstances, plaintiffs would have to file any action within the *statute of limitations.*

United States because the statute of limitations had run. The United States urges us to affirm on this ground, but says that if we find that the statute has not run, we should transfer the case to the Court of Federal Claims and require plaintiffs to specify the amounts of their claims for Tucker Act purposes. Because we believe the statute of limitations issue is dispositive and because we have no wish to prolong this already aged dispute, we affirm on the grounds that the claim was not brought within the FLSA's two-year statute of limitations. It would not be "in the interest of justice" under 28 U.S.C. § 1631 to transfer a case clearly barred by the statute of limitations. We affirm largely on the basis of the decisions of the district court judge and the magistrate judge. We add a brief comment to respond to plaintiffs' argument on appeal that the statute of limitations was tolled while they exhausted the grievance process.

The Supreme Court has squarely held in *Unexcelled Chem. Corp. v. United States,* 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953) that the FLSA's statute of limitations is not subject to tolling on the basis of pending administrative proceedings. The plaintiffs say, in response, that *Unexcelled* predates the enactment of the CSRA and thus could not have anticipated the required negotiated grievance procedure in the CSRA. But nothing in the logic of the reasoning in *Unexcelled* is undercut by this argument and the Supreme Court has not since suggested any infirmity in its holding in *Unexcelled.*

In this case, FLSA claims are not explicitly and unambiguously excluded from the grievance process established by the collective bargaining agreement. Indeed, as the arbitrator of the grievance between the union and the Shipyard found, "an arbitrator's authority to resolve FLSA determination disputes under the terms of the Collective Bargaining Agreement is clear and beyond dispute." Neither party has briefed these issues to the court and we see no reason to extend this case further in order to obtain such briefing. Accordingly, we also do not discuss whether the "exclusive procedures" provisions of the CSRA raise issues under Fed.R.Civ.P. 12(b)(1) or Fed.R.Civ.P. 12(b)(6). Compare *Montplaisir,* 875 F.2d 1, with *Roth,* 952 F.2d 611.

### IV.

For these reasons, we *affirm* the dismissal of the action.