Jeffrey T. HUSS, et al., Plaintiffs,

v.

CITY OF HUNTINGTON BEACH, et al., Defendants.

No. SACV 98–249 AHS(ANX).

United States District Court, C.D. California, Southern Division.

June 14, 2000.

Gregory G. Petersen, Castle Petersen and Krause, Garden Grove, CA, Steven Lewis Rader, Albright Yee & Schmit, Los Angeles, CA, Terri Nicole Marcus, Rose and Rose, Washington, DC, for Plaintiffs.

Brian P. Walter, Liebert Cassidy Whitmore, Los Angeles, CA, Gail Clifford Hutton, Lee Suzanne Burke, Scott F. Field, Huntington Beach City Attorney's Office, Huntington Beach, CA 92648 for Defendant.

ORDER: (1) DENYING PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION; (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT; (3) SUMMARILY ADJUDICATING SPECIFIED ISSUES; (4) RESETTING PRETRIAL CONFERENCE AND TRIAL DATES

STOTLER, District Judge.

## I.

### SUMMARY

Plaintiffs seek summary adjudication that their rights under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) ("FLSA") are not limited by the terms of any agreement between the parties. Defendants seek summary judgment based on the purported existence of a reasonable agreement between the parties. In the alternative, defendants seek partial summary judgment (1) that a two-year statute of limitations applies to plaintiffs' claims, and (2) that the limitations period was not tolled during the investigation of this case by the Department of Labor ("DOL"). The parties' motions are hereby denied.

Notwithstanding denial of the parties' motions, the discussion below provides a limited summary adjudication of issues relevant to the subsequent prosecution of this action. This disposition comes after careful review of the parties' submissions and upon the Court's independent research.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 13, 1998, plaintiffs filed the Complaint in this case seeking back pay and liquidated damages under the FLSA for time spent providing off-duty care to the dogs assigned to them as officers in the canine unit of the Huntington Beach Police Department ("HBPD"). The gravamen of plaintiffs' Complaint is that throughout their tenure at the HBPD (i.e., from October 1991 to March 1996),[1] the compensation they received for off-duty work with their dogs fell below the statutorily-mandated level. As relevant to the Court's analysis of the present motions for summary judgment, partial summary judg-

---

1. The approximate periods during which each of the plaintiffs worked as canine handlers for the HBPD were as follows: Jeffrey Huss: October 1991 to March 1996; Tom Landreth: January 1994 to September 1996; Dennis Plymale: February 1993 to February or March 1997; Russell Reinhart: November 1992 to March 1996. (Huss Dep. Vol. I at 8; Landreth Dep. at 10–11; Plymale Dep. at 28; Reinhart Dep. Vol. I at 12; Miller Decl. 11/8/99 at 1.)

ment, and summary adjudication, the factual context surrounding plaintiffs' claims may be summarized as follows.

It is undisputed that, in addition to their on-duty obligations, police dog handlers must spend some portion of their off-duty time caring for the dogs assigned to them, and that such care represents compensable work.

Beginning in 1990, it was the policy of the HBPD to give canine officers one day off per month as compensation for the off-duty care of their dogs. (Landreth Dep. at 24; Reinhart Dep. at 29–30; Plymale Dep. at 41–42; Huss Dep. at 28.) This "canine day" compensation could not be accrued; if not used in the month in which it was earned, the day would be lost. (Landreth Dep. at 24–25; Reinhart Dep. at 29–30; Plymale Dep. at 48; Huss Dep. at 26.) There was in place a memorandum of understanding ("MOU") concerning various work conditions between the City of Huntington Beach ("City") and the Huntington Beach Police Officers' Association ("HBPOA") covering the period prior to September 30, 1993, but the MOU did not address compensation for canine care. (Osness Decl. ¶ 4.)

On May 10, 1993, the HBPOA proposed a new MOU for the 1993–1994 term (i.e., the period from October 1, 1993 through September 30, 1994). Among the HBPOA's proposals was a provision that canine handlers receive ten hours of accruable "compensatory time off" ("CTO"), in lieu of the non-accruable canine day the handlers were then receiving. (Osness Decl. ¶ 5.) This proposal was accepted in a tentative MOU signed by the City's negotiators on November 18, 1993. (Osness Decl. ¶ 6.) However, the terms of the MOU for the 1993–1994 term were not finalized and approved by the City Council until May 1, 1995. (Osness Decl. ¶ 6.) At that time, the agreement was made applicable to the period from October 1, 1993 to September 30, 1994. (Osness Dec. ¶ 7.)

The record evidence indicates that upon the MOU's formal adoption in May 1995, canine handlers were not awarded accrued CTO from the 1993–1994 term. Throughout the period preceding the formal adoption of the 1993–1994 MOU, the City had continued to compensate canine handlers pursuant to the HBPA's non-accruable canine-day policy. Canine officers began to receive accruable CTO only after May 1995, when the 1993–1994 agreement was formally adopted.[2]

Even before the adoption of the 1993–1994 MOU, the HBPOA and the City had begun working on a new MOU to govern the period following the 1993–1994 term. The HBPOA's initial proposal was made on April 12, 1995, and did not seek to alter the terms relating to canine officer compensation. (Osness Decl. ¶ 9.) Negotiations between the HBPOA and the City led to impasse, and the parties submitted the outstanding issues to a neutral fact finder on March 14, 1996. Canine handler compensation was not among the issues submitted to the fact finder. The fact finder issued his report on May 6, 1996 (Osness Decl., Ex. 257.) Following the issuance of the fact finder's report, negotiations continued. When the parties were unable to reach a new MOU, the City accepted the fact finder's recommendations and unilaterally implemented them on January 21, 1997; with the exception of matters affected by the fact finder's recommendations, all other terms and conditions of the 1993–1994 MOU remained unchanged, including the provisions relating

---

**2.** Some evidence suggests that the City began offering canine handlers accruable CTO "as early as May 1995." (Field Decl. 11/8/99, Ex. E.) Other evidence of record indicates that CTO became available to canine handlers beginning in January 1996 (Reinhart Dep. Vol. I at 31.)

to canine-handler compensation.[3] (Osness Decl. ¶ 12.)

Meanwhile, in April 1996, plaintiffs had filed complaints with the DOL alleging that they were being inadequately compensated for their off-duty work. (Landreth Dep. at 126–129.) These complaints came after the officers had voiced their dissatisfaction with their compensation to their supervisors. (Perez Dep. Vol. II at 77.) In May 1996, an investigator from the DOL informed the HBPD that he would be conducting an investigation concerning the HBPD's FLSA compliance. (Stuart Dep. at 34.) On March 4, 1997, the DOL investigator notified the HBPD of the DOL's conclusion that the canine handlers should be compensated at the rate of time-and-a-half rather than with the straight-time compensation provided for in the 1993–1994 MOU, and that the canine handlers were therefore entitled to back pay under the FLSA. In addition, the investigator noted that most of the canine officers claimed to work substantially more off-duty hours with their dogs than the ten hours provided for in the MOU, but that the DOL would "accept a reasonable figure agreed upon by your department and the canine handlers (all canine handlers for the past two years)." (Stuart Dep., Ex. 10.)

In subsequent meetings and correspondence, the HBPD communicated to the DOL the HBPD's view that the existing compensation arrangements for canine handlers were adequate, particularly given that those arrangements were embodied in an MOU that was arrived at through collective bargaining. The City cited as authority for its position *Rudolph v. Metropolitan Airports,* 103 F.3d 677 (8th Cir. 1996). (Stuart Dep., Ex. 11.)

In early 1998, the DOL informed plaintiffs that it found that their off-duty canine compensation was governed by a "current [MOU]," and that "[w]ith recent court decisions on similar arrangements, it has been decided to close our investigation." (Landreth Dep., Ex. 228.)[4] The DOL went on to explain that:

> the fact that we will take no further action on your behalf does not affect your private right under the FLSA to recover any back wages due. The Department of Labor does not encourage or discourage such suits. However, keep in mind that recovery of back wages under this law is subject to a statute of limitations. Generally, this means that any part of a back wage claim which was earned more than two years before a suit is filed may not be collectible.

(*Id.*)

Plaintiffs claim that they viewed the above-referenced correspondence as a "right to sue letter." (Pl.s' Opp. to Df.s' MSJ at 8.)[5] Plaintiffs maintain that before

---

**3.** Soon after the City's unilateral implementation of the fact finder's recommendations, the City and the HBPOA began negotiations on a new MOU. On March 12, 1997, the HBPOA made its proposal, which did not seek to modify any terms involving compensation for off-duty work by canine handlers. On July 6, 1998, the City Council approved the new MOU for the term of October 1, 1997 to September 30, 2000. The canine-handler provisions remained the same as those agreed to in the 1993–1994 MOU. (Osness Decl. ¶ 14.)

**4.** The letter from the DOL to plaintiff Reinhart is dated February 2, 1995, but this date appears to be a typographical error. In their Statement of Uncontroverted Facts and Conclusions of Law ("SOUFACL"), plaintiffs suggest that the letter was sent in January 1998; in their Statement of Genuine Issues ("SOGI"), defendants indicate that the letter was dated February 1998.

**5.** In the citations contained in this Order, "motion for summary judgment" will be abbreviated "MSJ"; "motion for summary adjudication" is rendered "MSA"; opposition briefs are cited under the abbreviation "Opp.".

they received that letter, DOL personnel had led them to believe that they could not bring a private FLSA action during the pendency of the DOL investigation. (Reinhart Decl. ¶ 4.) In March 1998, plaintiffs brought the instant action.

On September 30, 1999, plaintiffs filed the present motion for summary adjudication of issues relevant to defendants' liability under the FLSA. Specifically, plaintiffs seek summary adjudication (1) that whatever compensation they received for off-duty dog care was not paid pursuant to a reasonable agreement between themselves and their employer, and (2) that they are therefore entitled to back pay for the hours they actually worked with their dogs but for which they were previously uncompensated.

On November 8, 1999, defendants filed opposition to plaintiffs' motion, and on December 6, 1999, plaintiffs filed their reply.

On September 30, 1999, defendants also filed their motion for summary judgment or for partial summary judgment. Defendants seek a ruling that they could not, as a matter of law, have violated plaintiffs' FLSA rights because canine-handler compensation during the relevant period was undeniably governed by a reasonable MOU between the City and the HBPOA. In the alternative, defendants seek summary adjudication (1) that a two-year statute of limitations applies to the plaintiffs' FLSA claims since any possible violation by the City was not willful, and (2) that the relevant limitations period was not tolled during the investigation of plaintiffs' charges by the DOL.

Plaintiffs filed their opposition to defendants' motion on November 29, 1999. On December 6, 1999, defendants filed their reply papers as well as an evidentiary objection to material submitted with plaintiffs' opposition brief.

On December 9, 1999, the Court took the matters under submission without oral argument.

## III.

### *DISCUSSION*

#### A. Effect of an Agreement on Plaintiffs' FLSA Rights

Defendants contend that whether or not plaintiffs were compensated at the level otherwise required by the FLSA for all the off-duty work they performed, plaintiffs cannot, as a matter of law, have suffered FLSA violations in this case because at all relevant times compensation for off-duty work by canine handlers was governed by a reasonable agreement between the City and the HBPOA (i.e., the 1993–1994 MOU).

In contrast, plaintiffs contend that the undisputed facts show either that there was no agreement between the officers and their employers or that the agreement was unreasonable. Moreover, plaintiffs emphasize, the undisputed evidence shows that the City began to compensate canine officers in accordance with the 1993–1994 MOU only after that agreement was formally adopted in May 1995. Accordingly, plaintiffs maintain, they are entitled to back pay for the uncompensated hours they actually worked prior to the formal implementation of the 1993–1994 MOU.

For the reasons set forth below, the Court concludes that there is no genuine issue as to the fact that there was an agreement between the parties which purported to fix the plaintiffs' compensation for off-duty canine care performed both during and after the 1993–1994 term. However, the Court further concludes that the reasonableness of that agreement cannot be determined as a matter of law. Accordingly, both parties' motions regarding the legal effect of the 1993–1994 MOU

must be denied, but relevant issues may be narrowed for trial.

### 1. Applicable Law

The FLSA was designed "to protect workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). The FLSA was not designed "to codify or perpetuate [industry] customs and contracts, but was designed to upset, to a degree, the free market of bargained for wages and length of work week." *Adams v. Department of Juvenile Justice of City of New York*, No. 93–CIV–8042 (PKL), 1996 WL 82404 (S.D.N.Y. Feb.26, 1996), *vacated and remanded on other grounds*, 143 F.3d 61 (2d Cir.1998) (internal citations omitted). One consequence of this statutory purpose is that employees normally cannot waive the substantive protections of the FLSA by contract. *See Barrentine*, 450 U.S. at 740, 101 S.Ct. 1437.

Among FLSA's protections, Section 207(a) provides that it is unlawful to employ an individual "for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." However, if the employer is a state agency, and the relevant compensation arrangements are developed through collective bargaining, the employer may, in lieu of cash overtime payments, credit its employees with compensatory time off ("CTO") at a rate not less than one and one-half hours for each hour of overtime worked. *See* 29 U.S.C. § 207(*o*).

Notwithstanding the general rule that workers and their employers cannot contract around the minimum pay standards set by the FLSA, DOL regulations recognize a limited role for contractual arrangements in circumstances where it is difficult to determine the hours an employee actually spends working. One such situation arises where the employee lives on the premises of the employer, or where the employee performs some portion of his work at his own home. *See Rudolph v. Metropolitan Airports Comm'n*, 103 F.3d 677, 681 (8th Cir.1996). Addressing this issue, 29 C.F.R. § 785.23 provides: "It is ... difficult to determine the exact hours' worked under these circumstances and any reasonable agreement of the parties which takes into account all of the pertinent facts will be accepted." In other words, the parties may fix by contract the amount of hours the employee will be deemed to be working, as opposed to engaged in personal activities. The rationale behind such a rule is clear: through a reasonable agreement that takes account of all pertinent facts, the parties can simplify the administration of the FLSA, while still ensuring that the employee's level of pay will approximate what the FLSA otherwise would mandate for the hours the employee actually works.

Agreements apportioning work hours under the FLSA must be reasonable, but they may take a wide range of forms. In addition to accepting individualized employment contracts, courts have recognized that labor organizations can enter into such agreements on behalf of their members in the process of collective bargaining. *See, e.g., Reich v. New York City Transit Auth.*, 45 F.3d 646 (2d Cir.1995); *see also Berry v. County of Sonoma*, 30 F.3d 1174, 1180 (9th Cir.1994). Moreover, such agreements may be express or implied, and need not be reduced to writing. *See Berry*, 30 F.3d at 1180; *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 374 (5th Cir.1987). Whether such an agreement is "reasonable" is a question of fact properly put to a jury. *See Rudolph*, 103 F.3d at 681.

## 2. Analysis

The manner and degree to which the 1993–1994 MOU affects plaintiffs' FLSA claims depend on whether the 1993–1994 MOU reflects the existence of a reasonable agreement, apportioning work hours in the at-home employment context, for some period relevant in this litigation. As set forth more fully below, the Court finds, as a matter of law, that the 1993–1994 MOU reflects an agreement for apportioning work hours in the at-home employment setting, both for the period of the 1993–1994 term itself and for all subsequent years relevant in this action. However, disputed issues of material fact preclude summary adjudication whether the agreement in question was reasonable and thus whether the terms of the agreement delimit plaintiffs' FLSA rights pursuant to 29 C.F.R. § 785.23.

### a. The 1993–1994 MOU reflects an agreement apportioning canine handlers' off-duty work hours for the period of the 1993–1994 term and subsequently.

■ The uncontroverted facts establish that for purposes of 29 C.F.R. § 785.23, there was an agreement in place which allocated the hours plaintiffs would be deemed to be engaged in off-duty dog care during the 1993–1994 term, and during all subsequent periods relevant to this action.

First, it is undisputed that the City and the HBPOA entered into an MOU in 1995, which expressly provided compensation for the off-duty dog care performed by HBPD canine handlers, and which purported to apply retroactively to the period of the 1993–1994 term. Because this agreement was entered into by the plaintiffs' duly-authorized labor organization, it is imputed to the plaintiffs themselves.[6] Furthermore, neither the authorities cited in plaintiffs' briefs, nor the Court's independent research, reveal any impediment under Section 785.23 to the parties' retroactively allocating the hours deemed to have been spent working at home during some prior period. A contrary reading of Section 785.23 would compromise the parties' ability to deal with FLSA-related issues in the collective bargaining context, and is rejected by the Court. Accordingly, it is beyond dispute that the hours plaintiffs are deemed to have spent in off-duty dog care during the 1993–1994 term were allocated pursuant to the 1993–1994 MOU.

In addition, several considerations make it clear that for purposes of Section 785.23, the parties' working agreement regarding compensation for off-duty canine care extended beyond the express expiration date of the 1993–1994 MOU. Most significantly, it is undisputed that throughout the negotiations following the adoption of the 1993–1994 MOU, the HBPOA proposed numerous changes to the HBPD's compensation arrangements, but never proposed modifications to those provisions relating to compensation for canine care. Further, it is undisputed that when the parties finally reached a mutually agreeable MOU for the 1997–2000 term, the provisions governing compensation for canine care were the

---

**6.** The Court notes that the DOL's March 4, 1997 letter to the HBPD states the DOL's willingness to "accept a reasonable figure agreed upon by your department and the canine handlers (all canine handlers for the past two years)." (Stuart Dep., Ex. 10.) Under one possible interpretation, such language may seem to imply that the HBPD had a duty to reach an agreement with each of the canine officers, individually. Whether or not such a reading reflects the investigating officer's interpretation of Section 785.23, the Court does not find that interpretation persuasive, and need not defer to that interpretation. *See Christensen v. Harris County*, 529 U.S. 576, 586–87, 120 S.Ct. 1655, 1662–63, 146 L.Ed.2d 621 (2000) (agency opinion letters not entitled to deference under *Chevron* doctrine).

same as those in the 1993–1994 MOU. Finally, in discerning the intent of the parties, the Court may assume that they negotiated the 1993–1994 MOU with a conscious understanding of certain basic rules of labor law, such as the rule that upon the expiration of the MOU, the City would have a duty to preserve the status quo regarding compensation arrangements pending the adoption of a new agreement.[7] *See Peerless Roofing Co. v. National Labor Relations Bd.*, 641 F.2d 734, 736 (9th Cir.1981) (explaining that "a collective bargaining agreement itself survives its expiration date for some purposes" and that "[d]uring negotiations, the employer is required by section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) (1976), to maintain the status quo as to wages and working conditions, even following the expiration date of the agreement"). When viewed as a whole, these considerations undeniably evince an ongoing, settled understanding between the City and the HBPOA that the 1993–1994 MOU properly allocated work hours for at-home dog care—not only for the 1993–1994 term, but for subsequent periods as well.[8] Whether or not such a working agreement

constitutes a fully effective collective bargaining agreement for all purposes of management-labor relations, the Court finds that it qualifies as an agreement under 29 C.F.R. § 785.23.[9]

**b. Reasonableness of the Agreement Embodied in the 1993–1994 MOU**

■ Although the Court recognizes that the 1993–1994 MOU embodies an agreement for apportioning at-home work hours for HBPD canine handlers, the record before the Court will not permit summary adjudication of the factual question whether the 1993–1994 MOU is a "reasonable agreement which takes into account all of the pertinent facts." The parties present dramatically conflicting evidence on the amount of time actually needed to care for the dogs, and the record is unclear as to the considerations that were taken into account in reaching the estimate of ten hours straight-time CTO as the proper amount of compensation. Consequently, the Court cannot say, as a matter of law, that the 1993–1994 agreement meets the reasonableness requirement of Section 785.23.[10]

7. In addition, the record reflects the City's expressed intention to maintain the status quo throughout the relevant period. *See, e.g.*, Osness Decl. ¶ 11.

8. *Cf. Abbey v. City of Jackson*, 883 F.Supp. 181, 183 n. 1 (E.D.Mich.1995) (noting that because the parties had followed the terms of a 1988–1991 collective bargaining agreement during negotiations for a new agreement, the plaintiffs' claims for damages from 1991–1993 were premised on the provisions of the 1988–1991 agreement).

9. Although the issue is not raised by the parties, the Court notes that, initially, it may appear unclear that the agreement embodied in the 1993–1994 MOU actually *apportions work hours*, because rather than provide the *number of hours* officers will be credited for at-home dog care, it establishes the *net compensation* they will receive (i.e., ten hours of

CTO per month, accruable at the straight-line rate). Nevertheless, the Court concludes that such a net-compensation provision apportions work hours within the meaning of Section 785.23. Such a provision simplifies the process of administering the FLSA in the at-home employment setting, and is permissible under Section 785.23, provided the provision is reasonable and was adopted after taking into account all pertinent facts.

10. A key distinction between the 1993–1994 MOU and the agreement found to be reasonable as a matter of law in *Rudolph* is that the contract in *Rudolph* contained a clause requiring the employees to obtain permission before working hours in excess of those provided for under the contract. Such a provision helped to ensure that the hours for which compensation had been contractually fixed would approximate the hours the employees actually worked.

### c.  Issues Remaining for Trial

In view of the foregoing analysis, it follows that the reasonableness of the agreement embodied in the 1993–1994 MOU is a disputed question appropriately submitted to the trier of fact.  If the trier of fact determines that the agreement was reasonable, the legal effect of that determination will be to fix ten hours of straight-time CTO per month as the amount of compensation to which plaintiffs are entitled under the FLSA for off-duty dog care performed during the 1993–1994 term and in subsequent periods.  For the period in question, plaintiffs would be entitled to damages for any short-fall between the compensation they actually received and the compensation to which they were entitled under the agreement.[11]  (Any damages which the plaintiffs may be able to claim for work performed prior to the 1993–1994 term would be unaffected by the agreement.)

If, however, the trier of fact should find that the agreement embodied in the 1993–1994 MOU was not reasonable under Section 785.23, the compensation rate fixed by that agreement would be irrelevant to the subsequent analysis.  Plaintiffs' damages for all relevant periods would be calculated based on any proved disparity between the hours plaintiffs actually worked and the hours for which plaintiffs were in fact compensated.

### B.  Limitations Period

Whether or not the agreement embodied in the 1993–1994 MOU is found to set the level of compensation to which plaintiffs are entitled under the FLSA, the time period for which plaintiffs may now claim damages depends upon (1) the applicable statute of limitations, and (2) whether the statute of limitations was tolled during the pendency of the DOL's investigation of this case.  Defendants request summary adjudication that the appropriate limitations period is two years, and that the relevant statute of limitations was not tolled during the DOL investigation.  For the reasons set forth below, defendants' motions for summary adjudication must be denied.

### 1.  Willful Violation of FLSA

#### a.  Applicable Standards

The statute of limitations applicable to plaintiffs' FLSA claims is codified at 29 U.S.C. § 255(a).  It establishes a two-year limitations period for most FLSA claims and a three-year period for claims arising out of willful violation of the statute.

■ Under *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), an employer will be found in willful violation of the FLSA only if it can be determined that the employer knew or showed reckless disregard as to whether it was violating the statute.  *See id.* at 133, 108 S.Ct. 1677.  The fact that an employer acts unreasonably in determining its legal obligations is not sufficient to show that the employer acted recklessly.  *See id.* at 135 n. 13, 108 S.Ct. 1677.

Whether or not a violation of the FLSA was willful is a question of fact properly submitted to a jury.  *See Brinkman v. Department of Corrections*, 21 F.3d 370,

---

**11.**  Without citing any relevant authority, defendants assert that if the 1993–1994 MOU qualifies as a reasonable agreement under Section 785.23, that fact alone deprives plaintiffs of their right of action under the FLSA.  As the Court's analysis indicates, defendants' assertion misunderstands the operation of an agreement under Section 785.23.  Under Section 785.23, a reasonable agreement merely allows the parties to fix by contract the number of hours to be compensated for at-home work; it obviously does not absolve the employer of his FLSA obligation actually to pay the worker, at the appropriate rate, for the hours agreed upon.

373 (10th Cir.1994). However, where an employer has relied on substantial legal authority or upon the advice of counsel, a finding of willfulness may be precluded as a matter of law. *See Service Employees Int'l Union, Local 102 v. County of San Diego,* 60 F.3d 1346, 1355–56 (9th Cir. 1994); *see also Baker v. Delta Air Lines,* 6 F.3d 632, 645 (9th Cir.1993).

### b. Analysis

■ Defendants base their motion for summary adjudication on two considerations. First, they note that under the reasoning of *Andrews v. DuBois,* 888 F.Supp. 213, 219 (D.Mass.1995), a law enforcement agency should not be found to have willfully violated the Act, where the agency "simply did not anticipate" the particular application of the FLSA under which it is ultimately found liable. Second, defendants note that under the reasoning of *Abbey v. City of Jackson,* 883 F.Supp. 181, 188 (E.D.Mich.1995), a willful violation of the FLSA should not be found where the employer has, in good faith, compensated workers pursuant to a collective bargaining agreement.

Although agreeing with the general principles articulated in the cited authorities, the Court finds this case readily distinguishable. In this case, the record is clear that the defendants recognized their duty to compensate canine handlers for off-duty dog care pursuant to the FLSA. Moreover, the record indicates that to the extent that defendants believed they were complying with the FLSA, that belief rested primarily on their assumption that the compensation due for off-duty dog care was governed by a reasonable agreement with the HBPOA. Yet the record is clear that when the 1993–1994 MOU was formally adopted in May 1995, plaintiffs did not receive the compensation that might have accrued under the agreement during the 1993–1994 term and subsequently. In fact, it was not until after the adoption of the agreement in 1995 that the terms of the 1993–1994 MOU were implemented, and applied on a prospective basis. Under these circumstances, a reasonable jury could view the defendants' failure to implement the 1993–1994 MOU retroactively as a willful violation of the FLSA, which relates back to the relevant prior period (i.e., the 1993–1994 term itself and subsequent periods). Accordingly, the Court must deny defendants' motion for partial summary judgment regarding willful FLSA violations.

### 2. Equitable Tolling

Regardless whether the FLSA's two-year or three-year limitations period is ultimately found to apply in this action, the period for which plaintiffs will be able to recover damages depends upon whether the relevant limitations period was tolled during the DOL's investigation of this matter. Defendants seek summary adjudication that no such tolling is proper in this case. For the reasons set forth below, defendants' motion must be denied.

### a. Applicable Standards

■ The limitations period for an action under the FLSA begins to run at the time the employer breaches his duties under the Act, not at the conclusion of any related administrative proceedings. *See Unexcelled Chem. Corp. v. United States,* 345 U.S. 59, 66, 73 S.Ct. 580, 97 L.Ed. 821 (1953). Moreover, the limitations period is not automatically tolled by the filing of an administrative grievance. *See id.* at 65, 73 S.Ct. 580; *Abbott v. United States,* 144 F.3d 1 (1st Cir.1998).

■ Section 255(a) is, however, subject to the doctrine of equitable tolling *See Partlow v. Jewish Orphans' Home of So. Cal., Inc.,* 645 F.2d 757 (9th Cir.1981), *overruled on other grounds by Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165,

110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Such equitable tolling is proper if, "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific Bell,* 202 F.3d 1170, 1178 (9th Cir. 2000). In addition, it has been found that equitable tolling is appropriate where a plaintiff's delay in bringing suit was caused by erroneous instructions from the administrative agency charged with public enforcement of the relevant statute. *See Lawrence v. Cooper Communities, Inc.,* 132 F.3d 447 (8th Cir.1998). Most authorities treat the question whether equitable tolling is justified as a question of fact for resolution by the jury. *See Heideman v. PFL, Inc.,* 904 F.2d 1262, 1266 (8th Cir. 1990); *Dillman v. Combustion Eng'g, Inc.,* 784 F.2d 57, 60 (2d Cir.1986); *Ott v. Midland–Ross Corp.,* 600 F.2d 24 (6th Cir. 1979); *but cf. Smith–Haynie v. District of Columbia,* 155 F.3d 575, 579 (D.C.Cir. 1998).

### b. Analysis

■ The above standards make clear that the limitations period on plaintiffs' FLSA claims was not automatically tolled by plaintiffs' filing an administrative grievance with the DOL. However, plaintiffs argue that the relevant statute of limitations should be *equitably* tolled for the period during which their complaint was under investigation by the DOL. Plaintiffs' most compelling argument for the application of equitable tolling is based on the allegation that DOL personnel consistently led them to believe that they could not pursue a private right of action under the FLSA until the DOL had completed its investigation. (Reinhart Decl. 11/29/99 ¶¶ 4, 6.) Defendants object to the proffered evidence on hearsay grounds.

As a preliminary matter, the Court overrules defendants' evidentiary objection to the statements contained in the Reinhart declaration. The statements of DOL personnel recounted therein clearly are not offered for the truth of the matter asserted; they are relevant only to the extent that they affect the reasonableness of plaintiffs' alleged ignorance that their FLSA claims had fully accrued.

Turning to the merits of plaintiffs' argument, the Court is persuaded that, if believed by the trier of fact, the testimony contained in the Reinhart declaration could lead a reasonable jury to find that the plaintiffs were excusably ignorant as to the accrual date of their FLSA claim. If the plaintiffs were excusably ignorant of the accrual of those claims during the pendency of the DOL investigation, they are eligible for equitable tolling.[12] Accordingly, the propriety of equitable tolling in this case hinges upon disputed questions of fact and upon credibility judgments that the Court is not free to make on a motion for summary adjudication. Defendants' motion for partial summary judgment regarding the tolling of plaintiffs' claims is therefore denied.

### IV.

### *CONCLUSION*

For the reasons set forth above, the Court denies defendants' motion for summary judgment and defendants' alternative motion for partial summary judgment. The Court also denies plaintiffs' motion for partial summary adjudication. The Court's limited summary adjudication of issues, which grants neither of the parties' motions, is set forth in the preceding discussion.

---

**12.** Depending on the jury's conclusions, the plaintiffs could recover damages or compensation from April 1993 or April 1994.

In light of the Court's disposition of the parties' motions, the Court hereby resets relevant case-management dates. The pretrial conference in this matter shall be held on August 28, 2000, at 2:00 p.m. Trial is hereby set to commence on March 6, 2001, at 10:00 a.m. The parties are reminded of their obligation to comply with Local Rules 9 and 23.5.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties in this action.